1
2
3
4
5
6
7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

LARRY GAASTERLAND,

Case No. 16-CV-03367-LHK

13

Plaintiff,

**ORDER GRANTING MOTION TO REMAND**

14

v.

Re: Dkt. No. 13

15

AMERIPRISE FINANCIAL SERVICES, INC.,

16

17

Defendant.

18

Plaintiff Larry Gaasterland ("Plaintiff") brings this action against Ameriprise Financial

19

Services, Inc. ("Defendant").  Before the Court is Plaintiff's motion to remand this case to Santa

20

Clara County Superior Court.  ECF No. 13 ("Mot.").  The Court finds this motion suitable for

21

decision without oral argument pursuant to Civil Local Rule 7-1(b) and VACATES the motion

22

hearing set for October 27, 2016, at 1:30 p.m.  The case management conference, set for October

23

27, 2016, at 1:30 p.m., is also VACATED.  Having considered the submissions of the parties, the

24

relevant law, and the record in this case, the Court GRANTS Plaintiff's motion to remand.

25

**I.      BACKGROUND**

26

   **A.  Factual Background**

27

Plaintiff was employed by Defendant from January 2013 to March 16, 2016.  ECF No. 1-1

28

United States District Court
Northern District of California

1  ("Compl.") ¶ 5.  "During the course of Plaintiff's employment," *id.*, Defendant made three loans

2  to Plaintiff totaling $406,106.20 in principal, ECF No. 16 at 3.  Plaintiff alleges that Defendant

3  "systematically engaged and continues to engage in unlawful wage and hour practices" by

4  "unlawfully deduct[ing] amounts" owed on these loans from Plaintiff's wage statements.  Compl.

5  ¶ 5.  Pursuant to this practice, "Defendant failed to pay Plaintiff . . . earned wages, made unlawful

6  deductions from earned wages, failed to pay minimum wages, failed to pay overtime wages and

7  failed to provide accurate wage statements."  *Id.* ¶ 7.

8  **B. Procedural History**

9  On May 13, 2016, Plaintiff filed the original complaint in this case in Santa Clara County

10  Superior Court.  Plaintiff's complaint contains a single cause of action, brought under the

11  California Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698.  *Id.* ¶¶ 9–11.

12  Plaintiff "seeks recovery of civil penalties and unpaid wages as prescribed by . . . PAGA on behalf

13  of himself and other current and former employees of Defendant against whom one or more . . .

14  violations of the [California] Labor Code and IWC Wage Orders were committed."  *Id.* ¶ 10.

15  On June 16, 2016, Defendant removed this case to federal court.  In the notice of removal,

16  Defendant claims that federal jurisdiction is appropriate on the basis of diversity jurisdiction.

17  Defendant states that Plaintiff is a California citizen and that Defendant is a Minnesota citizen.

18  Defendant avers that the amount in controversy in the instant case is $838,033.52, which is over

19  the minimum $75,000 threshold required for diversity jurisdiction.  ECF No. 1 at 9.

20  On July 15, 2016, Plaintiff moved to remand this case to Santa Clara County Superior

21  Court.  Defendant filed a response on July 29, 2016, ECF No. 16 ("Opp'n"), and Plaintiff filed a

22  reply on August 5, 2016, ECF No. 17 ("Reply").

23  **II.    LEGAL STANDARD**

24  A suit may be removed from state court to federal court only if the federal court would

25  have had subject matter jurisdiction over the case in the first instance.  28 U.S.C. § 1441(a); *see*

26  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally

27  could have been filed in federal court may be removed to federal court by the defendant.").  If it

28

appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court. 28 U.S.C. § 1447(c). A notice of removal must contain a "short and plain statement of the grounds for removal," a requirement that tracks the general pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure. 28 U.S.C. § 1446(a). The defendant bears the burden of establishing removal jurisdiction. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

## III.   DISCUSSION

"In order for federal subject matter jurisdiction to exist, a case must either involve diversity of citizenship between the parties or involve a claim arising under federal law." *Nguyen v. Caldo Oil Co.*, 2015 WL 5461666, *3 (N.D. Cal. Sept. 16, 2015). Because Plaintiff's only cause of action, PAGA, arises under California law, this case does not "involve a claim arising under federal law." *Id.* As to diversity jurisdiction, federal law requires the party asserting federal jurisdiction to show (1) diversity of citizenship between the parties and (2) an amount in controversy greater than $75,000. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 856 (9th Cir. 2001). Here, the parties agree that there is diversity of citizenship. Thus, Plaintiff's motion rises and falls based on whether Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 933 (9th Cir. 2001).

Defendant alleges that the amount in controversy is $838,033.52. The basis for Defendant's calculation is as follows:

| Category | Amount |
|---|---|
| Penalties for Unpaid Wages | $59,228.52 |
| Overtime Penalties | $42,258.40 |
| Waiting Time Penalties | $16,461.40 |
| Inaccurate Record Keeping / Wage Statement Penalties | $4,500.00 |
| Cancellation of Loans | $274,585.00 |

Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

| | |
|---|---|
| Future Attorney's Fees | $441,000.00 |

Before examining these computations, the Court takes a moment to briefly review the purpose and structure of PAGA.

**A.  Legal Framework**

The California Legislative enacted PAGA as a "[r]espon[se] to a shortage of State funds and staffing to enforce State labor laws." *Caliber Bodyworks, Inc. v. Superior Court*, 36 Cal. Rptr. 3d 31, 36 (Ct. App. 2005).  PAGA "allow[s] aggrieved employees, defined as any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed, to bring a civil action to collect civil penalties for [California] Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Id.* at 36–37 (internal quotation marks omitted).

An employee suing under PAGA "does so as [a] proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 209 P.3d 923, 933 (Cal. 2009).  In other words, "an aggrieved employee's action under . . . [PAGA] functions as a substitute for an action brought by the government itself." *Iskanian v. CLS Transp. Los Angeles, LLC*, 327 P.3d 129, 147 (Cal. 2014).  Consequently, PAGA allows an employee to recover "*civil penalties* on behalf of the state against his or her employer for [California] Labor Code violations." *Id.* at 133 (emphasis added); *see also Villacres v. ABM Indus. Inc.*, 117 Cal. Rptr. 3d 398, 412 (Ct. App. 2010) ("PAGA is limited to the recovery of *civil* penalties.").

The distinction between civil penalties and statutory penalties is particularly important to the instant case.  As the California Court of Appeal has explained, "[s]ome [California] Labor Code provisions establish penalties that are not expressly denominated 'civil penalties' and are therefore not subject to . . . PAGA." *Id.*  "If a penalty under the [California] Labor Code is not a 'civil penalty,' it is commonly called a 'statutory penalty.'" *Id.*

By way of example, California Labor Code § 201(a) "requires an employer to pay an employee's wages immediately upon discharge." *Id.*  If an employer does not comply with California Labor Code § 201(a), California Labor Code § 203 "imposes a *statutory* penalty of one

Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

day's wages for each day that the wages remain unpaid, not to exceed 30 days." *Id*.  On the other hand, California Labor Code § 256 "impose[s] a *civil* penalty in the form of waiting time pay for the same statutory violation.  But only the recovery of the civil penalty falls within the [purview of] PAGA." *Id.*; *see also Iskanian*, 327 P.3d at 147 ("The civil penalties recovered on behalf of the state under . . . PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities.").

Some California Labor Code sections provide a specific civil penalty.  An employer who "violat[es] [California Labor Code §§] 212, 216, 221, 222, or 223," for instance, is subject to a $100 civil penalty for the initial violation.  Cal. Lab. Code § 225.5.  For California Labor Code violations where no civil penalty is provided, PAGA provides a default penalty: "$100 for each aggrieved employee per pay period for the initial violation and $200 per pay period for each subsequent violation." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 429 (9th Cir. 2015) (citing Cal. Lab. Code § 2699(f)(2)).

Under PAGA, "civil penalties recovered by aggrieved employees [are] distributed as follows: 75 percent to the [California] Labor and Workforce Development Agency [LWDA] . . . ; and 25 percent to the aggrieved employees." Cal. Lab. Code § 2699(i).  If successful, an employee who prevails in a PAGA action is "entitled to an award of reasonable attorney's fees." Cal. Lab. Code § 2699(g).  The attorney's fees award is not subject to the 75%-25% allocation between the LWDA and aggrieved employees.  PAGA claims are subject to a one-year statute of limitations, unless another statutory provision provides otherwise. *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007).

To summarize, PAGA claims are unique in several respects.  First, employees bringing suit under PAGA step into the shoes of a California government agency, and the PAGA suit "functions as a substitute for an action brought by the government itself." *Iskanian*, 327 P.3d at 147.  Second, because "the state is the real party in interest" in a PAGA action, employees who bring suit under PAGA can only recover civil penalties. *Id.* at 151.  Third, these civil penalties are apportioned so that 75% of the penalties go to the LWDA, and 25% go to the aggrieved

5

United States District Court
Northern District of California

1  employees.[1]  Finally, PAGA claims are subject to a one-year statute of limitations.

2      With these principles in mind, the Court turns to the categories that comprise the alleged

3  amount in controversy: civil penalties for unpaid wages, overtime, waiting time, and inaccurate

4  record keeping and wage statements; cancellation of loans; and future attorney's fees.

5      **B. Unpaid Wages**

6      The complaint in this case was filed on May 13, 2016.  Under a one-year statute of

7  limitations, the relevant time period thus begins on May 13, 2015.  The complaint further alleges

8  that Plaintiff's employment with Defendant ended on March 16, 2016.  Compl. ¶ 5.  Hence, the

9  parties agree that the Court should focus on incidents occurring between May 13, 2015 and March

10  16, 2016—an approximate 10-month period.  Because Plaintiff was paid every two weeks, the

11  parties also agree that there were 22 pay periods during these 10 months.

12      During this 10-month period, Defendant asserts that loan "repayment deductions equaled

13  $4,935.71" per month, for a total of $49,357.10.  ECF No. 1 at 6.  Defendant further asserts that

14  Plaintiff may recover up to $9,871.42 in interest if Plaintiff prevails at trial.  *Id.*  Together, these

15  numbers total $59,228.52.

16      As an initial point, the Court can not, as a matter of law, consider the $9,871.42 in interest

17  in the amount in controversy.  The federal statute governing diversity jurisdiction expressly states

18  that "district courts shall have original jurisdiction of all civil actions where the matter in

19  controversy exceeds the sum or value of $75,000, *exclusive of interest*."  28 U.S.C. § 1332(a)

20  (emphasis added); *see also Sauer v. Prudential Ins. Co. of Am.*, 2011 WL 5117772, *2 (C.D. Cal.

21  Oct. 28, 2011) ("[P]rejudgment interest [is] expressly prohibited from inclusion in the amount in

22  controversy requirement.").

23

24  _____

25  [1] "District courts in California are split over the question of whether the full amount of PAGA
    penalties sought from a defendant should be included when calculating the amount in controversy,
    or only the 25% that would ultimately be paid to the aggrieved employee."  *Pagel v. Dairy*

26  *Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1154 (C.D. Cal. 2013); *id.* at 1154–55 (citing cases).
    The Court need not, however, weigh in on this split.  As shown below, Defendant has failed to

27  meet the $75,000 threshold even if the full amount of civil penalties were included in the amount
    in controversy.

28
Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

1    Defendant's attempt to include the entire $49,357.10 in loan repayment deductions is

2    likewise unavailing.  The $49,357.10 in loan deductions appear to correspond to the complaint's

3    assertion that Defendant "unlawfully deducted debt alleged[ly] owed to [Defendant] . . . from

4    Plaintiff's earned wages," which "result[ed] in a failure by [Defendant] to pay Plaintiff earned

5    wages on a by-monthly basis."  Compl. ¶ 6.

6    Under PAGA, however, the remedy for unpaid wages is *not* full reimbursement of those

7    unpaid wages.  Rather, "every person who fails to pay the wages of each employee . . . shall be

8    subject to a civil penalty as follows:

9        (1)  For any initial violation, one hundred dollars ($100) for each failure to pay
10       each employee.

11       (2) For each subsequent violation, or any willful or intentional violation, two
         hundred dollars ($200) for each failure to pay each employee, plus 25 percent of
12       the amount unlawfully withheld.

13   Cal. Lab. Code § 210(a).  Thus, Plaintiff may recover $100.00 for his first pay period, and $200.00

14   for each of the remaining 21 pay periods, for a total of $4,300.00.  In addition, pursuant to Cal.

15   Lab. Code § 210(a)(2), assuming that the total amount unlawfully withheld from Plaintiff's wages

16   was $49,357.10, Plaintiff may also recover up to 25% of $49,357.10, which is $12,339.28.

17   Adding these figures together results in a total of $16,639.28.  This figure—$16,639.28—is the

18   proper amount that Plaintiff may recover under PAGA for unpaid wages, not Defendant's claim of

19   $59,228.52.

20   **C.  Overtime**

21   Next, Defendant asserts that $42,258.40 should be included in the amount in controversy

22   for overtime liability.  Plaintiff counters that the amount should in fact be $11,726.04.  Reply at 4.

23   Both parties are incorrect.

24   Under PAGA, "[t]he failure to pay . . . overtime . . . penalties [is] governed by the penalties

25   [set forth] in California Labor Code Section 558."  *Guifu Li v. A Perfect Day Franchise, Inc.*, 2012

26   WL 2236752, *17 (N.D. Cal. June 15, 2012); *see also Kamar v. RadioShack Corp.*, 2008 WL

27   2229166, *14 (C.D. Cal. May 15, 2008) ("Because section 558 authorizes recovery of civil

28
Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

United States District Court
Northern District of California

penalties and provides for LWDA enforcement, the private right of action authorized [by PAGA] reaches section 558.").

California Labor Code § 558 provides as follows:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

Cal. Lab. Code § 558(a).  Plaintiff acknowledges that he worked overtime in each pay period. ECF No. 17-1.  Thus, under California Labor Code § 558, Plaintiff can recover at least $50.00 for his first pay period and $100.00 for the subsequent 21 pay periods, for a total of $2,150.00.

Moreover, the California Court of Appeal has held that California Labor Code § 558 should be "construed as providing a civil penalty that consists of *both* the $50 or $100 penalty amount *and* any underpaid wages, with the underpaid wages going entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees." *Thurman v. Bayshore Transit Mgmt., Inc.*, 138 Cal. Rptr. 3d 130, 157 (Ct. App. 2012).  Hence, Plaintiff may recover both $2,150.00 and any amount in overtime wages that he was not paid.

In order to compute the amount of overtime that Plaintiff is due, the Court must multiply Plaintiff's total overtime hours by one and one-half times Plaintiff's regular hourly rate of pay. *Huntington Mem. Hosp. v. Superior Court*, 32 Cal. Rptr. 3d 373, 374 (Ct. App. 2005).  Defendant has provided a summary of Plaintiff's wage statements, which indicate that Plaintiff's average hourly rate of pay was $68.59.  ECF No. 1-4 at 2.  Based on this hourly rate, the parties agree that

Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

United States District Court
Northern District of California

1    Plaintiff's overtime rate was approximately $102.86.  Mot. at 9; Opp'n at 8.[2]

2         The parties, however, part ways on how many overtime hours Plaintiff worked.  Plaintiff

3    has submitted a declaration stating that he worked 114 overtime hours from May 2015 through

4    March 2016.  ECF No. 17-1 at 2.  Plaintiff has reported his overtime hours by month, with

5    Plaintiff reporting as few as 4 overtime hours in February 2016 to as many as 16 overtime hours in

6    May 2015.  *Id.*

7         Defendant, on the other hand, relies upon a one-page excerpt from a report produced by the

8    Research and Practice Institute ("RPI").  ECF No. 1-7 at 2.  This excerpt states that, based on a

9    survey of financial advisers, RPI concluded that being a financial adviser "is not a 9:00-5:00 job;

10   nearly a third of advisors are working 50 or more hours, with most working several evenings every

11   week." *Id.* at 5.  The excerpt further notes that "[f]ifty-one percent of advisers, who work in

12   businesses that manage between $500m-$1b in client assets, work 50+ hours/week, dropping to

13   31% for those working in businesses that manage less than $100m in assets."  *Id.*  Based on this

14   excerpt, Defendant assumes that Plaintiff worked 50 hours per week, which results in 10 hours of

15   overtime per week and 20 hours of overtime per two-week pay period.

16        Under Ninth Circuit precedent, Defendant bears the burden of establishing removal

17   jurisdiction by a preponderance of the evidence.  *See Gibson*, 261 F.3d at 933 ("A defendant

18   attempting to remove a diversity case must show by a preponderance of the evidence that the

19   amount-in-controversy requirement is satisfied.").  Between these two perspectives—Plaintiff's

20   declaration of his overtime hours and Defendant's third party survey of financial advisers—

21   Plaintiff clearly has the better case, and Defendant has not sufficiently met its burden.

22        Indeed, the RPI report has little bearing on the facts of this case.  The report's findings, for

23   instance, were apparently "based on input from more than 750 advisers across the country." *Id.* at

24   4. Which country?  Did any of these 750 advisers work for Defendant?  Did any perform the sort

25

26   _____

27   [2] One and a half times $68.59 is in fact $102.89.  It is possible that the parties made a slight
     rounding error.  In any event, a $102.89 overtime rate and a $102.86 overtime rate does not affect
     the result in the instant case.

28
     Case No. 16-CV-03367-LHK
     ORDER GRANTING MOTION TO REMAND

1    of work that Plaintiff performed?  If so, did any of these 750 advisers regularly work 20 overtime

2    hours per pay period?

3              Moreover, RPI's findings are based on information from a survey that was conducted

4    "between February 11 and February 26, 2014."  *Id.*  That is not the relevant time period for

5    purposes of the instant case.  As the parties acknowledge, the Court must focus on the overtime

6    that Plaintiff worked between May 2015 and March 2016.  Finally, the report states that *only* 51%

7    of financial advisers who worked in businesses managing between $500 million to $1 billion in

8    assets in fact worked 50 or more hours per week.  Defendant has presented no evidence to indicate

9    that Plaintiff was among the 51% of advisers who worked 50 or more hours per week rather than

10   the 49% of advisers who worked fewer than 50 hours per week.  Nor has Defendant presented

11   evidence demonstrating that Plaintiff worked in a business which managed between $500 million

12   to $1 billion in assets.

13             In a similar case concerning the overtime hours worked by a sales representative, the

14   district court in *Anderson v. The Schwan Food Co.*, 2013 WL 3989562 (N.D. Cal. Aug. 2, 2013),

15   rejected defendant's attempt to estimate plaintiff's overtime based upon certain industry-wide

16   assumptions.  As the *Anderson* court explained, defendant's "estimated overtime damages figure

17   is built upon layer upon layer of assumptions that are unsupported by the complaint."  *Id.* at *5.

18   "There is no evidence that (1) all employees were compensated at the same hourly wage as

19   [plaintiff], (2) that the current number of [sales representatives] employed is a reasonable estimate

20   for the average number of [sales representatives] over the four year class period, (3) that every

21   [sales representative] worked two to four hours of overtime per day, and (4) that every [sales

22   representative] worked every possible work day over the four year period."  *Id.*

23             In contrast to the RPI report, Plaintiff relies upon a declaration that he has provided under

24   penalty of perjury which specifies the number of overtime hours worked during each month of the

25   relevant time period.  Both this Court and other courts have relied on similar declarations to

26   calculate the wages due an employee.  *See Rivera v. Rivera*, 2011 WL 1878015, *4 (N.D. Cal.

27   May 17, 2011) (using sworn declaration of "amount of hours worked by each employee" and "pay

28                                                  10

United States District Court
Northern District of California

1   rate" to compute total wages due); *see also id.* (citing *Ulin v. Alaea-72, Inc.*, 2011 WL 723617

2   (N.D. Cal. Feb. 23, 2011)).  Accordingly, the Court shall consider the overtime hours set forth in

3   Plaintiff's declaration for purposes of calculating the amount in controversy.

4         Plaintiff declares that he worked 114 overtime hours between May 2015 and March 2016.

5   At an overtime rate of $102.86, Plaintiff may be entitled to $11,726.04 in overtime wages.  This

6   number must be added to the $2,150.00 that California Labor Code § 558 also allows Plaintiff to

7   recover.  Taken together, Plaintiff could recover $13,876.04 in overtime penalties under PAGA.

8   **D. Waiting Time Penalties**

9         California Labor Code § 256 provides "a civil penalty in an amount not exceeding 30 days

10  pay" as a "waiting time" penalty for employers who do not pay an employee his or her wages on

11  termination.  Cal. Lab. Code § 256.  Defendant asserts that Plaintiff's claim for waiting time

12  penalties places $16,461.60 in the amount in controversy, and the Court agrees.  Plaintiff's

13  average hourly rate of pay was $68.59.  ECF No. 1-4 at 2.  Assuming an 8-hour work day and a

14  30-day waiting time period results in a total penalty of $16,461.60.

15        Plaintiff's attempt to challenge this calculation is misplaced.  Plaintiff asserts that his

16  waiting time penalty should be based on his daily rate of pay at the time of termination.  When

17  Plaintiff was terminated, he had been paid $342.73, per his final wage statement.  ECF No. 1-4 at

18  26.  If that payment is treated as a weekly rate, then Plaintiff's daily rate of pay, assuming a seven

19  day work week, would be $48.96.  Reply at 6.

20        Plaintiff's calculation is flawed in several respects.  First, Plaintiff has cited no authority to

21  suggest that the waiting time penalty must be paid according to Plaintiff's daily wage in the week

22  immediately preceding Plaintiff's termination.  The Court has found none in its own research.

23  Second, and more importantly, $342.73 does not reflect a week of work.  It reflects a single day of

24  work.  Plaintiff's final wage statement starts at March 16, 2016.  ECF No. 1-4 at 26.  Plaintiff's

25  employment terminated on March 16, 2016.  There would thus be no need to divide $342.73 by 7.

26        Accordingly, the Court declines to adopt Plaintiff's calculation.  Instead, consistent with

27  Defendant's contentions, the Court finds that Plaintiff may recover $16,461.60 in waiting time

28
Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

United States District Court
Northern District of California

1    penalties under PAGA.

2        **E. Inaccurate Record Keeping / Wage Statement Penalties**

3            Next, Defendant asserts that $4,500.00 should be included in the amount in controversy

4    because Plaintiff alleges that his "written compensation records were not accurate."  ECF No. 1 at

5    7.  Defendant's calculations, however, underestimate the amount in controversy.

6            Plaintiff's attempt to recover civil penalties for inaccurate compensations records

7    implicates four California Labor Code provisions.  First, California Labor Code § 1174.5 states

8    that "[a]ny person employing labor who willfully fails to maintain . . . accurate and complete

9    records . . . shall be subject to a civil penalty of five hundred dollars ($500)."  Cal. Lab. Code §

10   1174.5.  This is a one-time penalty, and both parties agree that it should be included in the amount

11   in controversy.  ECF No. 1 at 7; Reply at 6.  The Court concurs with this assessment, and

12   considers $500.00 under California Labor Code § 1174.5 as part of the amount in controversy.

13           Next, California Labor Code § 226(a) states that "[e]very employer shall, semimonthly or

14   at the time of each payment of wages, furnish each of his or her employees, either as a detachable

15   part of the check, draft, or voucher paying the employee's wages, or separately when wages are

16   paid by personal check or cash, an accurate itemized [wage] statement in writing."  Cal. Lab. Code

17   § 226(a).  According to Defendant, Plaintiff may recover up to $4,000.00 if Defendant violated

18   California Labor Code § 226(a).  Defendant bases this argument on California Labor Code §

19   226(e), which states that "[a]n employee suffering injury as a result of a knowing and intentional

20   failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual

21   damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one

22   hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed

23   an aggregate penalty of four thousand dollars ($4,000)."  Cal. Lab. Code § 226(e).

24           California Labor Code § 226(e), however, provides employees a *statutory* penalty that they

25   may recover if they sue in their individual capacities, not a *civil* penalty recoverable under PAGA.

26   As such, California Labor Code § 226(e) "does not apply to . . . PAGA," because under PAGA a

27   plaintiff may only "seek[] the recovery of *civil penalties* . . . as a private attorney general."

28
     Case No. 16-CV-03367-LHK
     ORDER GRANTING MOTION TO REMAND

United States District Court
Northern District of California

*McKenzie v. Fed. Express Corp.*, 765 F. Supp. 2d 1222, 1231 (C.D. Cal. 2011) (emphasis added); *see also Stoddart v. Express Servs., Inc.*, 2015 WL 5522142, *9 (E.D. Cal. Sept. 16, 2015) ("Plaintiff correctly asserts that [California] Labor Code section 226(e) provides for statutory penalties, not the civil penalties recoverable on behalf of the State.").

Consequently, the appropriate provision the Court must examine for violations of California Labor Code § 226(a) is not California Labor Code § 226(e), but California Labor Code § 2699, the PAGA provision which provides a default civil penalty if no civil penalty is otherwise prescribed. This default civil penalty is "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Cal. Lab. Code § 2699(f)(2). Pursuant to California Labor Code § 2699, Plaintiff would be entitled to $100.00 for the first pay period, and $200.00 for each of the 21 remaining pay periods. In total, Plaintiff may recover up to $4,300.00.

If Plaintiff's potential recovery under California Labor Code § 2699 ($4,300.00) is added to Plaintiff's potential recovery under California Labor Code § 1174.5 ($500.00), the total would be $4,800.00. This figure—$4,800.00—is the proper amount in controversy that Plaintiff may recover under PAGA in inaccurate record keeping and wage statement penalties.

## F. Cancellation of Loans

Next, Defendant's notice of removal states that Plaintiff continues to owe Defendant $274,585.00 from three loans. Defendant's attempt to include this number—$274,585.00—in the amount in controversy, however, is misguided.

First, as Plaintiff notes, Plaintiff's loan amounts are "irrelevant to Plaintiff's PAGA claim." Mot. at 12. "Nowhere in Plaintiff's PAGA claim does Plaintiff seek to . . . challenge the enforceability of [Defendant's loans]. Plaintiff's PAGA action seeks only the recovery of PAGA *penalties* arising from unlawful wage *deductions*." *Id.* at 15 (internal quotation marks omitted). To put it another way, Plaintiff does not, in the instant action, dispute that Plaintiff owes Defendant $274,585.00 in outstanding loans. Instead, Plaintiff challenges whether Defendant

Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

United States District Court
Northern District of California

violated PAGA by deducting from Plaintiff's wage statements in order to pay Plaintiff's loans.

Second, Defendant has cited no provision of the California Labor Code that would allow Plaintiff, as a civil penalty under PAGA, to cancel the remaining amounts on Plaintiff's loans to Defendant. Nor has Defendant cited any case where a state or federal court has cancelled an individual employee's debts as a PAGA civil penalty. The Court has found none in its own research.

Third, Defendant acknowledges that the outstanding loan balances are actually part of an entirely separate action before the Arbitration Board of the Financial Industry Regulatory Authority (the "FINRA Action"). Opp'n at 4. The outstanding loan balances and Defendant's allegedly unlawful wage deductions are thus being litigated in two separate actions. In the FINRA Action, the Arbitration Board must decide whether Plaintiff owes Defendant $273,585.00 in outstanding loans. In the instant case, a court must decide whether Defendant's method of collecting Plaintiff's debt—via wage deductions—was unlawful. The $273,585.00 in outstanding loans is in controversy in the FINRA Action, while the instant action concerns what Plaintiff may recover in civil penalties under PAGA.

Defendant does not challenge the foregoing points. Instead, Defendant contends that "a favorable ruling on the wage and hour violations pled will have binding collateral estoppel effects as to" the FINRA Action. *Id.* at 18. Hence, under the "either viewpoint" rule, Defendant argues that these outstanding loan amounts must be included in the amount in controversy.

The Court disagrees. "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). "The rule is usually applied in cases where the plaintiff pursues an equitable remedy," because it "can be difficult to place a monetary value on the proposed remedy when it is viewed from the perspective of the plaintiff, but relatively straightforward to ascertain the cost to the defendant of complying with the remedy." *Pagel*, 986 F. Supp. 2d at 1158. As the Seventh Circuit has explained, the "either-viewpoint" rule generally does not apply where only money damages are at

14

United States District Court
Northern District of California

1    issue, as "[i]n a case that seeks only money damages, the amount the defendant will lose is more

2    or less the same" as what a plaintiff might gain.  *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*,

3    309 F.3d 978, 983 (7th Cir. 2002).

4            The "either viewpoint" rule does not apply to the instant case.  As an initial matter, the

5    rule—as noted above—is "associated almost exclusively with cases seeking injunctive relief."

6    *Pagel*, 986 F. Supp. 2d at 1158.  Here, Plaintiff does not seek injunctive relief: Plaintiff seeks civil

7    penalties under PAGA, attorney's fees and costs, and interest.  Compl. at 4–5.

8            In addition, Defendant has cited no authority to suggest that a ruling in the instant case

9    would have any collateral estoppel effect upon the underlying FINRA Action.  The Court has

10   explained that these actions are different in nature: the FINRA Action will determine whether

11   Plaintiff owes Defendant $273,585.00 in outstanding debt, while the instant action will determine

12   whether Defendant's method of collecting Plaintiff's debt was unlawful.  These are separate and

13   distinct questions.  It is possible for a court to find that Defendant's wage deductions were

14   unlawful *and* for the FINRA Arbitration Board to determine that Plaintiff continues to owe

15   $273,585.00 in outstanding loans.

16           Moreover, Defendant's own representations demonstrate that Defendant could take steps to

17   prevent collateral estoppel from becoming an issue.  Indeed, in Defendant's opposition, Defendant

18   states that "[o]nce this matter"—the motion to remand—is "decided," Defendant "will move to

19   enforce the terms of this valid Arbitration Agreement as it is written and compel Plaintiff to

20   pursue his employment related claims in individual FINRA arbitration, if at all."  Opp'n at 5.

21   Thus, Defendant has declared that it will take actions, in either federal or state court, to ensure that

22   the FINRA Action and the instant action do not overlap.

23           Defendant's citation to *Wright v. RBC Capital Markets Corp.*, 2010 WL 2599010 (E.D.

24   Cal. June 24, 2010), and *Sciborski v. Pacific Bell Directory*, 140 Cal. Rptr. 3d 808 (Ct. App.

25   2012), are inapposite.  In *Wright*, the district court granted defendant's motion to dismiss under

26   the first-to-file doctrine.  As the *Wright* court noted, the status of plaintiff's debts to defendant had

27   been pending before the FINRA Arbitration Board.  2010 WL 2599010, *1.  Plaintiff, however,

28

United States District Court
Northern District of California

15

Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

decided to file a completely parallel lawsuit in federal court "seek[ing] a judicial declaration that the promissory notes [on these loans were] unenforceable." *Id.* at *7. Plaintiff in *Wright* did not assert a PAGA claim; he simply attempted to re-litigate the status of his debts in an alternative forum. The *Wright* court did not discuss the "either-viewpoint" rule. In short, the facts in *Wright* are substantially distinguishable from the facts here. As the Court has pointed out, the FINRA Action and the instant action involve separate and distinct issues. The instant action is not, as it was in *Wright*, simply an attempt to re-litigate Plaintiff's debts in an alternative forum.

In *Sciborski*, the California Court of Appeal examined whether plaintiff's causes of action under the California Labor Code were preempted by the federal Labor Management Relations Act. After concluding that plaintiff's causes of action were not preempted, the California Court of Appeal upheld the jury's decision to award plaintiff $35,000 in statutory penalties under the California Labor Code. 140 Cal. Rptr. 3d at 826–27. Notably, plaintiff in *Sciborski* did not bring a PAGA claim, did not seek civil penalties, and only recovered statutory penalties. There was no parallel proceeding in *Sciborski*, and the California Court of Appeal did not discuss the "either-viewpoint" rule.

To summarize, because Plaintiff can not seek cancellation of his outstanding loans under PAGA, because Plaintiff's outstanding loan balance is the subject of a separate FINRA Action, and because the "either viewpoint" rule does not apply, the Court declines to consider Plaintiff's $274,585.00 loan balance in the amount in controversy.

**G. Future Attorney's Fees**

Finally, the parties agree that Plaintiff has, at this time, incurred little in attorney's fees. Other than the instant motion to remand, there have been no other substantive motions filed. Rather, the primary dispute between the parties is whether the Court should estimate and include future attorney's fees in determining the amount in controversy requirement.

"As a general rule, attorneys' fees are excludable in determining the amount in controversy because, normally, the successful party does not collect his attorneys' fees in addition to or as part of the judgment." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) (alteration

16

United States District Court
Northern District of California

1    omitted).  However, an exception exists if "a statute mandates or allows the payment of such

2    fees." *Id.* (emphasis removed).  Here, PAGA does allow prevailing plaintiffs to recover attorney's

3    fees.  *See* Cal. Lab. Code § 2699(g) ("Any employee who prevails in any action shall be entitled to

4    an award of reasonable attorney's fees.").

5            In examining whether attorney's fees may be considered in determining the amount in

6    controversy in a PAGA action, "[c]ourts in the Ninth Circuit are split as to whether only attorneys'

7    fees that have accrued at the time of removal should be considered in calculating the amount in

8    controversy, or whether the calculation should take into account fees likely to accrue over the life

9    of the case." *Carranza v. Nordstrom, Inc.*, 2014 WL 10537816, *17 n.99 (C.D. Cal. Dec. 12,

10   2014).  The *Carranza* court cited two cases where district courts had decided to include post-

11   removal attorney's fees in calculating the amount in controversy, and eight cases where district

12   courts had declined to do so.  *Id.*

13           After discussing these cases, the *Carranza* court ultimately concluded that "only attorneys'

14   fees that have accrued as of the date of removal may be considered in determining the

15   jurisdictional amount . . . at stake." *Id.*  In reaching this decision, the *Carranza* court stated that

16   considering future attorney's fees would be "entirely speculative," based on "unsupported

17   assumptions," and possibly "irrelevant," depending on how a case is ultimately disposed.  *Id.*

18           Indeed, even in those cases where courts have considered future attorney's fees in

19   determining the amount in controversy, these courts have required defendants to provide a

20   reasonably specific showing as to why a certain fee award is appropriate.  In *Sasso v. Noble Utah*

21   *Long Beach, LLC*, 2015 WL 898468, *5 (C.D. Cal. Mar. 3, 2015), for example, the district court

22   cautioned that future attorney's fees estimates should be "reasonable," based on "evidence," and

23   should arrive at a "conservative estimate[]."  The district court went on to base its estimate of the

24   total hours in an employment discrimination case—100 hours—after surveying relevant decisions

25   from other courts, with a resulting fee award of $30,000.  *Id.* at *6.  Similarly, in *Brady v.*

26   *Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002), defendant produced

27   evidence showing that approximately $5,000 had been spent in attorney's fees prior to removal,

28

Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

*United States District Court*
*Northern District of California*

and, in a number of factually similar cases, approximately $60,000 was spent in total attorney's fees. This reasonableness requirement also comports with the statutory text—PAGA allows prevailing plaintiffs to recover "an award of *reasonable* attorney's fees." Cal. Lab. Code § 2699(g) (emphasis added).

The Court need not, in the instant case, decide whether future attorney's fees may be considered in the amount in controversy as a matter of law because Defendant's estimate of future attorney's fees is far too speculative. As such, Defendant's estimate does not satisfy the reasonably specific showing that was made in *Sasso* or *Brady* and that is required under PAGA.

In the notice of removal, Defendant states that, "[a]s of 2012, Plaintiff's counsel was charging between $600 and $700 per hour for partners and between $500 and 600 per hour rate for associates." ECF No. 1 at 8. Assuming that these same rates would be charged in the instant case, and "assuming Plaintiff's counsel expends 700 hours should the matter proceed to trial, [attorney's] fees would total $441,000.00 if the work was apportioned 70% to associates and 30% to partners." *Id.* at 8.

Defendant has provided no support for Defendant's assumption that this matter will go to trial. In fact, Defendant's stated intention to enforce the arbitration agreement between Plaintiff and Defendant immediately after this motion is decided suggests that Defendant does not believe that this matter will go to trial. Defendant has likewise provided no support for its assumption that Plaintiff's counsel would spend 700 hours on this case. Defendant cites without explanation to *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002), but *Simmons* was not a PAGA case and the *Simmons* court did not once discuss how many hours were necessary to litigate a PAGA action.

The Court has also reviewed a number of cases where courts have decided to include future attorney's fees in the amount in controversy. In none of these cases did the district court (1) predict that as many as 700 hours would be spent on litigation, (2) predict that a matter would proceed to trial, (3) estimate attorney's fees to be as high as $441,000.00, or (4) estimate that nearly half of the alleged amount in controversy would be future attorney's fees. *See, e.g.*, *Brady*,

18

243 F. Supp. 2d at 1011 ($60,000 in attorney's fees); *Sasso*, 2015 WL 898468 ($30,000 in attorney's fees); *Simmons*, 209 F. Supp. 2d at 1035 ($6,500 in attorney's fees).

The fact that Defendant has estimated that nearly half of the amount in controversy in this case will be in the form of future attorney's fees—an amount unsupported by both fact and law—is indicative of the weakness of Defendant's case. The Court thus declines to consider the $441,000.00 attorney's fees for purposes of the amount in controversy requirement.

Having examined each of the categories of civil penalties available to Plaintiff under PAGA, the Court finds that the amount in controversy is below $75,000, the threshold amount necessary for federal diversity jurisdiction. As demonstrated below, the total estimated amount in controversy is $51,746.72.

| Category | Amount |
|---|---|
| Penalties for Unpaid Wages | $16,639.28 |
| Overtime Penalties | $13,876.04 |
| Waiting Time Penalties | $16,461.40 |
| Inaccurate Record Keeping / Wage Statement Penalties | $4,800.00 |
| Cancellation of Loans | $0.00 |
| Future Attorney's Fees | $0.00 |
| **Total** | $51,476.72 |

Plaintiff's motion to remand is therefore GRANTED.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. The Clerk shall transfer the case file to Santa Clara County Superior Court. The Clerk shall also serve a copy of this Order on Defendant.

**IT IS SO ORDERED.**

Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND

United States District Court
Northern District of California

Dated:  September 15, 2016.

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

20

Case No. 16-CV-03367-LHK
ORDER GRANTING MOTION TO REMAND